## Applegate v. Means et ux.

October 4, 1949.

Norman W. Bowman and Harvey Parker, Jr. for appellant.

Chas. H. Riedinger for appellee.

JUDGE HELM—Reversing.

The appellant, Mark Applegate, and appellees, H. M. Means and Ida Means, his wife, are adjoining landowners living near Tollesboro in Lewis County.

On December 12, 1946, appellant filed a petition in equity, alleging that the erection of a legal division fence between the lands of appellant and appellees on the north side of his farm is desirable and necessary; that his land is improved; that he is engaged in raising livestock; that the fence now between the lands of the parties is not a legal fence, does not turn cattle and, therefore, does not comply with KRS 256.010; that in compliance with KRS 256.040 he duly notified appellees to construct their part of such fence; that they disregarded the notices and failed to erect their portion of the fence; that he duly notified them that he would erect their part of the fence; that on December 10, 1946, he and his employees proceeded with the erection of appellees' portion of the fence; that appellee, H. M. Means, appeared on the scene armed with a club and ordered appellant and his employees to desist from erecting the fence, to get off of his land and not to come back on it; that he did this in an angry and threatening manner; that appellant, by reason of appellee's conduct, thought he might use drastic measures which would result in bloodshed, serious injury or murder and prayed that the circuit court issue its injunction enjoining and restraining appellees and their employees from making threats or interfering with or molesting the appellant in the erection of the fence.

On December 23, 1946, the trial judge heard the par-

ties and their witnesses in open court. Some eighteen months later, on an unnamed day of the June term, 1948, the trial court filed a written opinion and entered judgment denying the injunction and dismissing appellant's petition. This appeal is from that judgment.

It was stipulated that appellant was the owner of 164 acres; that appellees were the owners of 100 acres; that these lands joined on the north side of appellant's farm; that the notices provided by KRS 256.040 were duly served and posted; that appellant was, on December 12, 1946, the owner of cows, calves, sheep, hogs and horses, had 49 head of livestock upon his farm. At the hearing it was stipulated that the allegations of the petition "are traversed of record." Appellee did not file any pleading.

Summarizing appellant's evidence: A division fence is desirable and necessary between the lands of the parties for a distance of 95 rods; that appellant had erected 47½ rods along this line of woven wire, 6 inch mesh, with two barbed wires on top, a legal fence that would turn cattle and hogs; that along the other 47½ rods or Means' portion of the fence, the old fence is 12 inch mesh, in many places is 8, 10 or 12 inches from the ground; that it will not turn pigs, pigs up to 60 pounds can pass through it, 200 to 250-pound hogs can pass under it, and it won't turn hogs at any place; that a 12 inch fence wouldn't turn hogs; that the old fence was erected in the early 1930's; that his field next to Means had been used "as hog pasture for many years;" that hogs have gotten through the fence hundreds of times; that the fence was being erected on the division line; that a new fence was necessary because the old fence would not turn hogs at any place; that it cannot be repaired so it will turn hogs; that a woven wire fence with 12 inch stays won't turn hogs; that the new fence constructed by appellant on his part of the line was well constructed of woven wire, 6 inch mesh, would turn pigs or anything; that Applegate had the materials and workmen at hand and was replacing a fence that was not lawful, had not been repaired, and could not be repaired with a fence with "six inch stays instead of twelve;" that cattle, including hogs (see KRS 446.010), could not get through, over or under; that Means came out to where Applegate and his employees were starting to build the fence upon

appellees' part of the line; that Means was carrying a club, ordered them to stop the work, told them he meant for them to stop, that he was a dangerous man, the meanest man in Lewis County, and would fight the devil; that "he would die and go to hell before he would build it." Appellant ceased building the fence and filed this action.

Summarizing the testimony for appellees: Means testified that he built his part of the old division fence in 1930, a 4 foot, woven wire, 12 inch stays fence, with barbed wire on top of it, exactly like the fence Applegate had constructed on his half of the division line. Means had not had any hogs for many years. Means planted potatoes on his land. He saw pig tracks and he sent Applegate word by his son to please keep his pigs up, "and if he didn't please, to keep them up anyway." Means ordered Applegate and his men not to tear down his fence, told them he wanted them to understand they were not to move his fence. He might have talked mean but he didn't threaten to kill. Means did not live on his land, hasn't lived there since the first fence was put up. If hogs had got through the fence, he didn't know about it. He went over there Tuesday before the trial and "repaired the fence," he didn't attempt to make any repairs in the fall after Applegate served notices on him. Means had never had any objection to barbed wire on the fence. Means is older now, forty years ago Applegate would have whipped him or he would have whipped Applegate. Means "wouldn't have had any better sense than to try him a whirl." Means, speaking of the old fence, said, "I thought I had a lawful fence."

Here the only relief sought was an injunction. The trial court denied appellant's motion for an injunction and dismissed his petition.

When this court entertains no more than a doubt as to the correctness of the chancellor's finding, such a finding is affirmed. Here we have more than a doubt as to the correctness of the finding. We believe that appellant was entitled to the relief sought in his petition. Therefore, the judgment of the lower court is reversed with directions to set it aside and for the entry of a judgment consistent with this opinion.